# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ZEP, Inc., )
)
)
*Plaintiff*, )
v. )  No.  09 CV 1973
)
FIRST AID CORP., d/b/a 1st AYD CORP. )  **Honorable David H. Coar**
and WILLIAM CARLYON, STEVEN )
BARTHOLOMEW, EDWARD BATES, )
GERALD GREIL, AND JENNIE )
THOMPSON, )
)
*Defendants*. )

## MEMORANDUM OPINION AND ORDER

Zep, Inc. ("Zep") brings a three count complaint against Edward Bates ("Bates"), Steven Bartholomew ("Bartholomew"), William Carlyon ("Carlyon"), Jennie Thompson ("Thompson"), collectively the "individual defendants", and First Aid Corporation ("First Aid").[1]  Count I of the complaint is a breach of contract claim against the individual defendants. Count II is a claim for misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA") against all defendants. Count III is a tortious interference with contract claim against First Aid.  Before the Court are motions to dismiss filed by Bates [Dkt. 88], Bartholomew [Dkt. 91], Carlyon [Dkt. 94], Thompson [Dkt. 97]; and First Aid [Dkt. 100].  For the reasons stated below, the motion is GRANTED in part, and DENIED in part.  All counts against Bates, Bartholomew, and

---

[1] Zep has voluntarily dismissed Gerald Greil as a defendant. [Dkt. 165.]

Thompson are dismissed for lack of personal jurisdiction.  The Court denies the motions to dismiss filed by Carlyon and First Aid.


## BACKGROUND

Zep is a Georgia-based corporation selling industrial cleaning products. Zep formerly employed the individual defendants as sales representatives before they were subsequently hired by First Aid, a direct competitor based in Illinois.  Allegedly, during their employment with Zep, the individual defendants had access to the company's confidential information and trade secrets, including the identities of customers; knowledge of customer needs, buying history, and buying patterns; customer contact lists; supplier lists; competitive pricing information; and training provided to sales representatives.  In their employment contracts, known as Sales Representative's Exclusive Account Agreements, the individual defendants each agreed to non-disclosure, non-solicitation, non-recruitment, and non-compete covenants.[2]  They also promised to return all materials relating to their work with Zep upon termination of their employment.

Zep alleges that First Aid, with full knowledge of these agreements, intentionally induced the individual defendants to breach them.  During their employment with First Aid, the individual defendants have allegedly used or disclosed Zep's trade secrets and confidential information, solicited client accounts previously accessed during their time with Zep, induced or attempted to induce employees of Zep to terminate their employment, and retained Zep's confidential information and trade secrets. Zep has alleged damages arising from these acts.

---

[2] Bartholomew agreed to a non-disclosure covenant in his employment termination contract, wherein he also promised to return materials related to Zep's affairs.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). To survive the motion, a complaint need only describe the claim in sufficient detail to give the defendant fair notice of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). A plaintiff's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in plaintiff's favor. *Tamayo*, 526 F.3d at 1081.

## ANALYSIS

### I. Personal Jurisdiction – Bates, Bartholomew, & Thompson

Typically, actions against former employees for breach of restrictive covenants are filed in the employer's home state, because that is where the defendant was employed, where the relevant contracts were negotiated or signed, or where continuing obligations are owed. *See, e.g.*, *Kelly Services, Inc. v. Noretto*, 495 F.Supp.2d 645, 653-55 (E.D. Mich. 2007); *FBR Capital Markets & Co. v. Short*, No. 09 CV 1016, 2009 WL 3254458, at *3 (E.D.Va. 2009); *Crossfield Hastech, Inc. v. Harris Corp.*, 672 F.Supp. 580. 585-88 (D.N.H. 1987). Likewise, lawsuits for misappropriation of trade secrets are often brought in the injured party's home state, as that is where the effect of the harm is usually suffered. *See, e.g.*, *Riddell v. Monica*, No. 03 C 3309,

2003 WL 21799935, at *3-4 (N.D. Ill. July 25, 2003); *Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838130, at *4 (N.D. Ill. Aug. 12, 2002). Rather than file this suit in its home state of Georgia, however, Zep has elected to litigate in Illinois. Bates, Bartholomew, and Thompson ("Defendants"), residents of Michigan and Ohio, move to dismiss all counts against them on the grounds that this Court lacks personal jurisdiction over them.

In a diversity action, a federal district court sitting in Illinois may only exercise personal jurisdiction where an Illinois state court could exercise such jurisdiction. *Hyatt Intl. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997). The Illinois long-arm statute permits Illinois courts to exercise personal jurisdiction up to the limits of the United States Constitution. *Hyatt*, 302 F.3d at 714-15; 735 ILCS 5/2-209 (2008). Therefore, this Court need only inquire whether contacts between the Defendants and Illinois satisfy due process under the state and federal constitutions. *See Bombliss v. Cornelsen*, 824 N.E.2d 1175, 1179 (Ill. App. Ct. 2005).

The Fourteenth Amendment Due Process Clause requires that a defendant have "minimum contacts" within a state in order for its courts to assert jurisdiction, so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Where a defendant has deliberately "engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum," he has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-76 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal citations and quotation marks omitted). Due process is respected because such an individual "should reasonably anticipate

being haled into court [in the forum state]." *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Depending on the relationship between the contacts and the facts forming the basis for the lawsuit, a court may assert "general" or "specific" jurisdiction over defendants. *Int'l Medical Group, Inc. v. American Arbitration Assoc., Inc*., 312 F.3d 833, 846 (7th Cir. 2002). General jurisdiction may be exercised if the defendant's contacts neither arise out of nor are related to the suit, yet the defendant has "continuous and systematic general business contacts" in the forum. *Id.* (citing *RAR*, 107 F.3d at 1277). In contrast, specific jurisdiction may exist where the lawsuit is related to or arises from the defendant's contacts with the forum state. *See id.* Given the limited amount of contacts alleged by Zep, the Defendants' specific personal jurisdiction is at issue.

Specific personal jurisdiction requires a certain degree of relatedness between a defendant's contacts and the subject of the suit. *See RAR*, 107 F.3d at 1277. The Seventh Circuit has held that, for the purpose of determining specific jurisdiction, "the action must *directly arise* out of the specific contacts between the defendants and the forum state." *RAR*, 107 F.3d at 1278 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995) (emphasis in original)). "Specific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties.' " *Id.* Accordingly, the Court must consider whether Zep's claims "directly arise" out of Defendants' alleged contacts with the state of Illinois.

### A.  Breach of Contract

Defendants have not provided affidavits disputing the jurisdictional facts as alleged in Zep's Complaint. The Court therefore accepts as true all allegations in plaintiff's complaint. *See* Fed. R. Civ. P. 12(b)(2). Zep alleges that, after signing non-disclosure, non-solicitation, non-

recruitment, non-compete, and promise-to-return agreements with Zep, Defendants entered into employment contracts with First Aid, whose principal place of business is in Elgin, Illinois. Zep further alleges that, at the direction of their subsequent employer, Defendants disclosed confidential information and engaged in other activities in direct violation of their contractual obligations with Zep.

Certainly, Defendants have availed themselves of the privilege of conducting activities in Illinois by accepting and maintaining employment with an Illinois-based company. Stated differently, their employment created "continuing obligations" between themselves and First Aid, a company principally operating out of Illinois. Yet, "in a breach of contract case, it is only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to minimum contacts analysis." *RAR*, 107 F.3d at 1278 (citing *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 153 (3d Cir. 1996)) (italics in original). Thus, if the covenants at issue had been negotiated between Defendants and First Aid as terms of their employment, their employment contracts would constitute contacts vesting personal jurisdiction in Illinois.

But Defendants and Zep are the only parties to the disputed contracts in the instant case. They presumably negotiated and signed their agreements in Georgia, or perhaps in Defendants' respective home states. Regardless of the actual location, Zep never alleges that any part of the dealings related to Defendants' agreements to return materials or non-disclosure, non-solicitation, non-recruitment, and non-compete covenants occurred in Illinois.

Zep places great emphasis on allegations that Defendants violated their agreements "at the direction" of First Aid, "in concert" with First Aid, "on behalf" of First Aid, and "in conspiracy" with First Aid. In a breach of contract action, minimum contacts analysis

contemplates "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." *Burger King,* 471 U.S. at 479 (internal quotation marks omitted). The location of the entity allegedly facilitating, inducing, or otherwise benefitting from a defendant's breach is not a consideration. *See, e.g.*, *Citadel Group Ltd. v. Washington Regional Medical Center,* 536 F.3d 757, 762-63 (7th Cir. 2008) (considering who initiated the transaction, where the contract was entered into, where the performance of the contract was to take place, where the contract was negotiated, and where continuing obligations were owed). Moreover, despite peppering its complaint with references to a civil conspiracy, Zep does not specifically allege a conspiracy claim, nor has it argued or adequately pled a conspiracy theory of jurisdiction. *See Olson v. Jenkins & Gilcrist*, 461 F.Supp.2d 710, 725 (N.D. Ill. 2006) (listing cases in this district requiring *prima facie* factual showing of conspiracy, specific facts warranting the inference that defendant was a member, and a showing that the instate conspirator committed a tortious act in furtherance of the conspiracy); *Ahmed v. Quinn*, No. 96-2796, 1997 WL 471335, at *3 (7th Cir. Aug.13, 1997) (nonprecedential disposition) (holding that, to demonstrate a *prima facie* case of personal jurisdiction based on conspiracy, plaintiff must allege some facts from which the court can find a meeting of the minds among the defendants).

To be sure, the relationship between a defendant's instate activity and the anticipated performance or breach of a contract is a relevant factor. *See Citadel*, 536 F.3d at 762-63*; Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 289 (1st Cir. 1999); *Papachristou v. Turbines Inc.,* 902 F.2d 685, 686 (8th Cir. 1990) (en banc); *Jones v. Petty-Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir. 1992). Defendants' restrictive covenants bound their actions within certain "territories," which conceivably encompassed

Illinois.  But the complaint does not specify one way or the other.  Indeed, Zep's exhibits indicate that Defendants' respective "territories" coincided with their states of residence.

In addition, Defendants allegedly breached their restrictive covenants through acts of disclosure, solicitation, recruitment, misappropriation, or use of confidential information and trade secrets.[3]  Zep never alleges where any of these acts took place.  The omission further undermines Zep's efforts to secure jurisdiction.  *See Arnold v. Goldstar Financial Sys., Inc.*, No. 01 C 7694, 2002 WL 1941546, at *5 (N.D. Ill. Aug. 22, 2002) (citing *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202-03 (7th Cir. 1990)) (holding that active solicitation of a forum resident customer, resulting in a single agreement, was sufficient to establish personal jurisdiction); *Teksystems, Inc. v. Modis, Inc.*, No. 08 C 5476, 2008 WL 5155667, at *3 (N.D. Ill. Dec. 5, 2008) (holding that recruitment of plaintiff's forum resident employee from plaintiff's forum state office, to work in defendant's forum state office, was sufficient to establish personal jurisdiction).  For the above reasons, the Court lacks personal jurisdiction over Defendants Bates, Bartholomew, and Thompson for Zep's breach of contract claims.

## B.  Misappropriation of Trade Secrets

The Court now considers whether it may assert personal jurisdiction over Defendants with respect to Zep's ITSA claim.

A nonresident defendant submits to the jurisdiction of Illinois courts by committing a tortious act within the state. 735 ILCS 5/2-209(a)(2).  The elements of an ITSA violation include: (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) use

---

[3] Defendants' employment with First Aid did not *per se* violate Zep's contractual rights.  As Zep emphasizes in its own brief, its claims cannot rest on the "mere employment" of the individual defendants; the alleged contract language does not prevent signatories from seeking subsequent employment with a competitor.

of that trade secret in the defendant's business. *Marketing, Inc. v. Murphy,* 740 N.E.2d 1166, 1176 (Ill. App. Ct. 2000).

Zep's complaint contains no allegations placing either the misappropriation or use of Zep's trade secrets in Illinois. At best, Zep alleges that Defendants used its trade secrets "at the direction of and in concert and in conspiracy with" Illinois-based First Aid, to the company's benefit. (Compl. ¶ 27.) This sheds no light on whether any tortious conduct occurred in Illinois. Zep has not alleged, for example, that Defendants made any communications to Illinois, with an intent to affect Zep's Illinois interests, in the execution of the alleged tort. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990) ("[M]ailings or telephone calls by a nonresident, when coupled with an intent to affect Illinois interests, are a sufficient basis for jurisdiction."); *System Software Associates, Inc. v. Trapp*, No. 95 C 3874, 1995 WL 506058, at *8 (N.D. Ill. Aug. 18, 1995) (speculating that the out-of-state solicitation of customers in Illinois, based on misappropriated trade secrets, could constitute a tortious activity in the state); *Keelshield, Inc., v. Megaware Keel-Guard, Inc.*, No. 00-1312, 2001 WL 575833, at *5 (C.D. Ill. May 11, 2001) (listing cases where the issue of whether defendant's tortious activities were intended to affect plaintiff's financial interests in Illinois was determinative). Moreover, as discussed above, Zep has neither argued nor adequately pled a conspiracy theory of jurisdiction.

From Zep's passing citation of *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir. 1997), the Court assumes that Zep also invokes the effects doctrine. Under the effects doctrine, personal jurisdiction is proper when a nonresident defendant's intentional tortious actions are aimed at the forum state, cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered. *Calder v. Jones,* 465 U.S. 783, 788-90 (1984). "The effects doctrine is interpreted broadly to permit the state in which the injury (and therefore the tort) occurs to

entertain the suit, even if all other relevant conduct occurred outside the state." *Janmark*, 132

F.3d at 1202-03 (7th Cir. 1997).

Zep has not alleged that Defendants aimed their actions at Illinois, that their actions

caused harm to Zep in Illinois, or that they knew such harm was likely to be suffered. For

instance, Zep has not alleged that Defendants stole trade secrets kept in Zep's Illinois offices or

related to its Illinois sales or client base. *See, e.g.*, *Teksystems*, 2008 WL 5155667, at *3

(personal jurisdiction established where defendant misappropriated customer information from

plaintiff's forum state office). Given that Defendants were given access to information

pertaining to their specific client bases, it seems more likely that any misuse would result in

injury to Zep's operations in Defendants' respective "territories," or perhaps to Zep's Georgia

headquarters. *See Janmark*, 132 F.3d at 1202-03 (personal jurisdiction established in Illinois

where a New Jersey customer's canceled order injured corporate plaintiff at its base of

operations in Illinois).

Left without guidance as to where Zep's injuries occurred, the Court cannot properly

apply the effects doctrine to assert personal jurisdiction over Defendants. The Court thus lacks

specific personal jurisdiction over Defendants Bates, Bartholomew, and Thompson. The breach

of contract and ITSA claims against them must be dismissed.

### C. Zep's Arguments

Rather than address issues germane to personal jurisdiction, Zep's opposition briefs focus

largely on ancillary arguments. For example, Zep quotes an agreement that Defendants have

signed with First Aid, wherein they agree not to disclose a former employer's confidential or

trade secret information, among other things, and consent to the jurisdiction of the courts of

Dupage County, Illinois, for any legal action involving a breach of that agreement.

The amended complaint contains no reference to this document. *See Rosenblum v. Travelbyus .com Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002) (documents referred to in the complaint that are central to plaintiff's claims may be considered on a motion to dismiss). Regardless, the forum selection clause, as alleged in Zep's brief, pertains to legal disputes between the parties to that agreement, i.e. First Aid and Defendants. It by no means constitutes a waiver of the personal jurisdiction defense in lawsuits between Zep and Defendants over their restrictive covenants. *See Royal Sleep Products, Inc. v. Restonic Corp.*, No. 07 C 6588, 2009 WL 303352, at *11 (N.D. Ill. Feb. 6, 2009) (forum selection clause in unrelated contract does not confer specific jurisdiction over lawsuit arising from another contract).

Zep also argues that it is entitled to conduct additional discovery in light of its findings to date. Zep suspects that Defendants have assented to jurisdiction in any venue where First Aid is sued, or in Illinois generally. It also seeks to ascertain the extent to which Defendants have transacted business in Illinois. In support of its request, Zep cites excerpts from First Aid's answers to its interrogatories, indicating that customer orders from unlawfully solicited clients were processed in Illinois. As stated above, how First Aid may have benefitted from or responded to Defendants' breaches is irrelevant. Zep's suspicions fail to convince the Court that discovery will produce the results Zep desires. Its request to postpone a decision pending further discovery is denied.

## II. Carlyon's Motion to Dismiss

Defendant Carlyon is the only individual defendant who has not raised a personal jurisdiction defense.[4] The grounds for his motion to dismiss are addressed below.

---

[4] Carlyon's "territory" encompasses counties in both Illinois and Missouri. (Compl. Ex. A)

## A. Fair Notice

Carlyon asserts that Zep's complaint is too vague to provide him proper notice. He complains that Zep fails to allege "who, what, where, when, or how he breached the contract or used trade secrets," as well as identify the specific trade secrets or confidential information abused by each defendant, with regard to each enumerated breach or act.

The federal rules require only a short, plain statement of a claim. Fed. R. Civ. P. 8(a). Specific facts are not necessary; the complaint need only give fair notice of what the claim is and the grounds upon which it rests. *Twombly,* 550 U.S. at 555. Zep has alleged that the individual defendants, as former employees, had access to its confidential information and trade secrets, including the identities of customers and other data. While in the subsequent employ of First Aid, the defendants retained, disclosed, and used this information to compete against Zep; solicited accounts with which they had prior dealings during their employment with Zep; and induced or attempted to induce Zep employees to quit.

It is true, as Carlyon observes, that Zep does not describe the manner, timing, and location of these actions, nor does it name the customers or employees targeted by the defendants' alleged conduct. But "detailed factual allegations" are not required under the notice-pleading standard. *Id.* at 555. The Court is satisfied that Carlyon and his co-defendants can deduce the grounds upon which Zep's claims rest based on these allegations.

Carlyon also takes issue with the fact that Zep fails to specifically name him as the culprit for any of the alleged breaches. Rather, Zep alleges that "All of the individual Defendants" engaged in the conduct described in certain enumerated paragraphs. This phrase provides enough information to adequately notify each defendant of the claims made against him or her. Lest there be any remaining confusion, the Court will spell it out for Carlyon: the words "all of

the individual defendants" implicate the behavior of Carlyon, Bates, Bartholomew, and Thompson.

In short, Zep's complaint, while lacking in specificity, provides "sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### B. Enforceability of the Contract

Carlyon argues that Zep has failed to state a claim against him for a breach of contract because no binding contract was ever created. He submits an affidavit from his former supervisor in support of his position. He further attests that the absence of a signature by a Zep representative on his contract indicates a lack of mutuality of obligation or agreement, thus invalidating his restrictive covenants.

Carlyon misapprehends the nature of the instant motion. A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Carlyon may litigate the issue of whether he is bound by Zep's restrictive covenants at a later stage in these proceedings. For now, the Court need only determine whether Zep has pled enough facts to state a claim for breach of contract under the relevant state's laws to suggest a plausible entitlement to relief.

Carlyon asks the Court to clarify which state's law applies to this action. The individual defendants' briefs rely on Georgia law, whereas Zep's and First Aid's briefs rely on Illinois law. Because the contracts at issue have no choice of law provision, Illinois conflict-of-law principles must dictate the substantive law to be applied. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (district court must apply the choice-of-law rules of the

forum state in which it sits to resolve choice-of-law disputes).  However, "before entangling itself in messy issues of conflict of laws[,]"the Seventh Circuit advises that "a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992).  The Illinois Supreme Court agrees, holding that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.,* 879 N.E.2d 893, 898 (Ill. 2007).  Here, the outcome of this opinion remains the same, whether the Court applies Illinois law or Georgia law.

To state a claim for breach of contract under Illinois law, Zep must allege: 1) the existence of a valid contract with defendants; 2) defendants' breach of that contract; 3) plaintiff's performance under the contract; and 4) damages to plaintiff resulting from such breach.  *See Van Der Molen v. Wash. Mut. Fin., Inc.*, 835 N.E.2d 61 (Ill. App. Ct. 2005).  Under Georgia law, a plaintiff states a claim for breach of contract when he alleges: (1) the parties had a contract, (2) which the defendant breached, and (3) the plaintiff suffered damages. *See Brenner v. Future Graphics, LLC,* 2006 WL 5306540 (N.D. Ga. 2006) (citing *Budget Rent-a-car v. Webb,* 469 S.E.2d 712 (Ga. 1996)); *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. App. Ct. 2009). Zep has alleged facts in support of each of the elements required by both Illinois and Georgia law. (Compl. ¶¶ 18, 27-30, 40, 46.)

The fact that Zep has not signed the employment contract it seeks to enforce against Carlyon, who did sign, is immaterial at this point.  The contract may remain enforceable, so long as the agreement is supported by consideration that is accepted by the parties.  *See Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 649 (7th Cir. 2001); *Deschaine v. Central Systems, Inc.*,  No. 05-CV-388-WDS, 2006 WL 1663731, at *5

(S.D. Ill. June 13, 2006) (citing *Peoria Harbor Marina v. McGlasson*, 434 N.E.2d 786, 791 (Ill. App. Ct. 1982); *Comvest v. Corporate Securities Group,* 507 S.E.2d 21, 24-25 (1998); *Comvest, L.L.C. v. Corporate Securities Group, Inc.*, 507 S.E.2d 21, 24-25 (Ga. App. Ct. 1998). Based on the allegations, Carlyon is bound by restrictive covenants because Zep's subsequent employment of Carlyon provides sufficient consideration for his promises not to compete, recruit, solicit, or retain materials; Zep, for its part, accepted Carlyon's promises. *See Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997); *Glisson v. Global Sec. Services, LLC*, 653 S.E.2d 85, 86 (Ga. App. Ct. 2007).

Carlyon accurately states that, under certain circumstances, contracts lacking signatures are unenforceable. But Zep has not alleged facts mirroring those of the opinions cited by Carlyon, which, in any event, assess the existence of mutual assent from evidence produced at trial. *See, e.g.*, *Royal Mfg. Co. v. Denard & Moore Constr. Co.*, 224 S.E.2d 770, 770-71 (Ga. App. Ct. 1976); *TranSouth Fin. Corp. v. Rooks*, 604 S.E.2d 562, 564-65 (Ga. App. Ct. 2004). To wit, Zep has not "pled itself out of court." Accordingly, its breach of contract claim against Carlyon survives a motion to dismiss.

### C. Enforceability of Non-Compete Covenants

Carlyon contests that the non-compete covenants are unenforceable on their face under Georgia law. In Georgia, non-compete covenants must be limited in time and territorial effect. *See Orkin Exterminating Co. v. Walker*, 307 S.E.2d 914, 916 (Ga. 1983). Illinois has similar constraints. *See Southern Ill. Medical Business Associates v. Camillo*, 546 N.E.2d 1059, 1064-65 (Ill. App. Ct. 1989) (holding that restrictive covenants may be held enforceable only if time and territorial limits are reasonable and restrictions are reasonably necessary to protect legitimate business interests of the employer).

The "territory" in which Carlyon's covenants bind him covers ten counties in the states of Missouri and Illinois. (Compl. Ex. A at 6.) Carlyon argues that his obligations under the covenants are not confined to a particular geographic area because the contract contains a provision stating that "The Company [Zep] and the Sales Representative [Carlyon] may change the Territory from time to time by mutual written agreement." (Compl. Ex. A ¶ 1.)

This clause does not eradicate the territorial limits of Carlyon's covenants or render them unenforceable. It only permits modification of the contract upon mutual agreement by the parties. Until such time as both parties agree to alter the terms of Carlyon's agreement, he remains bound to it within ten counties in the St. Louis area. Such a covenant is not unenforceable on its face under Georgia or Illinois law for lack of territorial limits. Whether it is reasonable is another issue, requiring fact-based determinations inappropriate at the motion to dismiss stage. *See Southern*, 546 N.E.2d at 1065 (determination of the reasonableness of a restrictive covenant requires scrutiny of the facts and circumstances of each individual case); *Koger Properties, Inc. v. Adams*, 274 S.E.2d 329, 331 (1981) ("[F]acts might be necessary to show that a questionable restriction, though not void on its face, is, in fact, reasonable."); *AutoMed Technologies, Inc. v. Eller,* 160 F.Supp.2d 915, 923 (N.D. Ill. 2001); *Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997).

### D. Stating a Claim under the Illinois Trade Secrets Act

Carlyon argues that Zep has failed to state a claim under the ITSA. ITSA governs all trade secret claims under Illinois law. 765 ILCS 1065/8-9. To prevail on an ITSA claim, Zep must prove (1) the existence of a trade secret, (2) misappropriation of that trade secret, and (3) that the trade secret was used in the defendant's business. *See Strata Marketing, Inc. v. Murphy,* 740 N.E.2d 1166, 1176 (Ill. App. Ct. 2000); *Magellan Intern. Corp. v. Salzgitter Handel GmbH,*

76 F.Supp.2d 919, 927 (N.D. Ill. 1999). A plaintiff must articulate concrete protectable trade secrets in its complaint; "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *See Composite Marine Propellers. Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir. 1992) (per curiam).

Carlyon argues that Zep has failed to identify its trade secrets with the specificity required to avoid dismissal, because Zep has not precisely identified what qualifies as a trade secret and what is merely confidential. Zep has alleged that its "confidential information and trade secrets include, but are not limited to, names and identities of customers, knowledge of customer needs, knowledge of customer buying history and patterns, customer contact lists, supplier lists, competitive pricing information and training provided to sales representatives." (Compl. ¶ 9.) Zep may not distinguish between trade secrets and confidential information when describing this selection of data, but nor does it merely point to a broad area of information and concluded that somewhere, secret and misappropriated data must exist.

Among the types of information ITSA recognizes as trade secrets are "list[s] of actual or potential customers or suppliers" and "financial data." 765 ILCS 1065/2(d). By describing the economic value of its information and the efforts taken to ensure secrecy, (Compl. ¶¶ 10-16), Zep has adequately alleged that at least its customer and supplier lists may constitute trade secrets. 765 ILCS 1065/2(d)(1)-(2). Whether any or all of the information described by Zep actually qualifies as a trade secret, as opposed to confidential or public information, is a matter to be taken up at a later point. *See IDX Systems Corp v. Epic Systems Corp*., 285 F.3d 581, 683-84 (7th Cir. 2002) (existence of trade secrets decided at summary judgment); *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (existence of trade secrets decided at a bench

trial).  For now, it suffices that Zep's allegations have stated a claim under ITSA.  (Compl. ¶¶ 9-16, 27, 30, 51.)

### E.  Attorneys' Fees

Finally, Carlyon objects to Zep's prayer for attorney's fees, because the contract contains no provision shifting attorneys' fees between the parties in the event of a breach.  Zep has clarified that it seeks attorneys' fees as a part of the punitive damages sought for the defendants' willful and malicious conduct in their alleged violations of ITSA.  This is permissible.  *See E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 1004 (Ill. App. Ct. 1993) (holding that attorneys' fees may be included in a punitive damages award but not awarded separately).


### III.     First Aid's Motion to Dismiss

First Aid condemns certain legal theories that Zep may potentially rely on to argue its position.  First Aid asserts that, to the extent that Zep relies on the "mere employment" of the individual defendants or the "inevitable disclosure" or information as the factual predicate for Claims II and III, these claims should be dismissed.  In response, Zep asserts that it does not rely on "mere employment" or "inevitable disclosure" as the bases for its claims, but rather sues on other factual allegations. The complaint supports this assertion.

The Court need not parse out which legal theories Zep may validly invoke in litigating this case.  At this juncture, it need only consider whether Zep has stated a claim upon which relief can be granted.  As discussed above, Zep has adequately stated a claim for breach of contract and violations of ITSA.  For what it's worth, Zep has adequately pled a tortious interference claim, as well. *See Strosberg v. Brauvin Realty Services*, 691 N.E.2d 834, 845 (Ill.App.Ct.1998) (Elements of a claim for tortious interference with contract include: (1) the

existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract with a third party; (3) defendant's intentional and unjustified inducement of a breach of that contract; (4) subsequent breach of the contract by the third party as a result of defendant's inducement; and (5) damages.); (Compl. ¶¶ 18-38, 64).

The only issues raised by First Aid not previously discussed in this opinion are those of preemption and the enforceability of Zep's non-recruitment covenants.

### A. Preemption

First Aid argues that ITSA preempts Count III. ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. Claims are preempted by ITSA "only when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404-05 (7th Cir. 2005). Accordingly, Count III is preempted if depends on the misappropriation of a trade secret.

Zep asserts that Count III is not preempted because the "confidential information" covered by the restrictive covenants is broader in definition than "trade secret" under ITSA. "[W]hile there may be substantial overlap between confidential information and trade secrets, 'an enforceable restrictive covenant may protect material not properly characterized as a trade secret' and thus affords broader protection than does trade secret law." *SKF USA, Inc. v. Bjerkness,* 636 F.Supp.2d 696, 711 (N.D. Ill. 2009) (quoting *Smith Oil Corp. v. Viking Chem. Co.,* 468 N.E.2d 797, 800 (Ill. App. Ct. 1984)).

Counts II and III indeed describe different harms. The ITSA claim is based on the misappropriation of trade secrets only,[5] whereas the tortious interference claim alleges that First

---

[5] In its complaint, Zep refers to both trade secrets and confidential information in the paragraphs relating to Count II. For the purposes of clarity, the Court will construe paragraphs 47-56 as only referring to trade secrets.

Aid disrupted the confidentiality agreements between Zep and the individual defendants, which protects trade secrets as well as, allegedly, other confidential information. ITSA thus does not preempt Count III. *See Aspen Marketing Services, Inc. v. Russell*, No. 09 C 2864, 2009 WL 4674061, at *6 (N.D. Ill. Dec. 3, 2009) (finding that ITSA did not preempt tortious interference claim based on nondisclosure agreements with former employees).

If it later comes to light that all the unlawfully obtained information qualifies as trade secrets, the Court can take proper measures at that point to address the sustainability of Count III. For the moment, Zep's tortious interference claim survives a motion to dismiss.

### B. Enforceability of Non-Recruitment Covenants

Like Carlyon, First Aid challenges the enforceability of one of Zep's covenants. At issue is the non-recruitment covenant prohibiting the individual defendants from recruiting any employee of Zep's who worked concurrently with the individual defendants, for any business competing with Zep within the year prior to the defendants' termination, during the defendant's employment or the 18 months following their termination. (Compl. Ex. A ¶ 14.) First Aid argues that the non-recruitment covenant is patently overbroad because it prohibits individuals from recruiting *any* Zep employee. Zep's restrictions, argues First Aid, can support no legitimate business interest because they bar the defendants from soliciting Zep employees with whom they share no business or personal ties.

First Aid compares this provision to ones deemed unenforceable by the courts in *YCA, LLC v. Berry*, No. 03 C 3116, 2004 U.S. Dist. LEXIS 8129, at *50-51 (N.D. Ill. May 6, 2004), *Hay Group, Inc. v. Bassick*, No. 02 C 8194, 2005 U.S. Dist. LEXIS 22095, *8-9, 22 (N.D. Ill. Sept. 29, 2005); *Pactiv Corp. v. Menasha Corp.*, 261 F.Supp.2d 1009, 1014-15 (N.D. Ill. 2003). The *YCA*, *Hay*, and *Pactiv* courts rejected non-recruitment covenants that prohibited the

recruitment of any employee from a former company, to work in any kind of business, anywhere. *Id.* Those covenants were not binding because the courts could find no legitimate business purpose served by, say, preventing an American salesperson from recruiting a janitor from her former employer to work in the postal service in Somalia. *See YCA*, 2004 U.S. Dist. LEXIS 8129, at *51; *Hay*, 2005 U.S. Dist. LEXIS 22095, at *22.

Zep's covenant is not comparable to those addressed by the above cases. Zep limits its restrictions to the recruitment of employees who worked for Zep at the same time as the individual defendants. More importantly, it only prevents recruitment to companies selling the same products as Zep within a year of the defendant's termination. This provides a tenable link to a legitimate business purpose not present in First Aid's examples. Thus, under Illinois law, Zep's non-recruitment covenant is not overbroad on its face. Moreover, as far as the Court can ascertain, Georgia courts have yet to find covenants presumptively unenforceable when they prevent former employees, for some period of months, from recruiting, for a competitor, employees who worked concurrently with them. *See, e.g.*, *ALW Marketing Corp. v. McKinney*, 421 S.E.2d 565, 568 (Ga. App. Ct. 1992) (holding non-recruitment covenant overbroad for including a tolling clause that extends the potential duration of the covenant in perpetuity); *Club Properties*, 348 S.E.2d 919, 920 (Ga. App. Ct. 1986) (holding non-recruitment covenant preventing appellants from hiring any of appellee's employees for an undetermined length of time unenforceable for lack of reasonable time limit). Under both Illinois and Georgia law, further analysis into the reasonableness of Zep's restrictive covenants would require fact-based determinations inappropriate at the motion to dismiss stage. *See Southern*, 546 N.E.2d at 1065; *Koger Properties, Inc. v. Adams*, 274 S.E.2d at 331.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part, and DENIED in part. The motions to dismiss submitted by Bates, Bartholomew, and Thompson are granted. Counts I and II against these individual defendants are dismissed. Carlyon's and First Aid's motions to dismiss are denied.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **March 19, 2010**